UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------X
MARIA CINTRON, et al.,         :
                               :
          Plaintiffs           :
                               :
     v.                        :     NO. 3:69cv13578 (EBB)
                               :
THOMAS VAUGHN, et al.,         :
                               :
          Defendants           :
                               :
------------------------------X

## **RULING ON DEFENDANTS MOTION FOR RECONSIDERATION [DOC NO. 109]**

Pursuant to D. Conn. Civ. R. 7(c), Defendants move for reconsideration of this Court's April 17, 2007 ruling denying Defendants motion to terminate the services of Special Master Richard Bieder. [Doc. No. 108]. Specifically, Defendants argue that the Court reconsider its ruling because "the Special Master's impartiality must be reasonably questioned." [Doc. No. 109]. Alternatively, Defendants argue that a modified Order of Reference should issue if the Court declines to terminate the Special Master's services.

Motions for reconsideration under D. Conn. Civ R. 7(c) "are as a practical matter the same thing as motions for amendment of judgment under Fed. R. Civ. P. 59(e) – each seeks to reopen a district court's decision on the theory that the court made mistaken findings in the first instance." City of Hartford v. Chase, 942 F.2d 130, 133 (2d Cir. 1991). The standard for granting a motion for reconsideration is strict. A court "will only

reconsider a prior decision in the same case if there has been an intervening change in controlling law, there is new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice." United States v. Sanchez, 35 F.3d 673, 677 (2d Cir. 1994). In general, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995).

The Court has carefully considered Defendants' argument that the Special Master's impartiality is in question, and finds this argument to be without merit.

However, given that Special Master Bieder's appointment under the old Order of Reference recently expired, the court re-appoints him *nunc pro tunc* to a one year term, ending October 1, 2008, under the terms of the Order of Reference as modified by this Court's April 17, 2007 ruling.[1] Although Defendants request that the Court eliminate the "Duties and Powers" section[2] of the expired Order, the Court declines to do so.

Defendants argue that once they withdrew their consent to the

---

[1] The Court's ruling denying Defendants motion to terminate Special Master Bieder's services modified the Order of Reference by changing the "costs and payments" provision. Specifically, the Special Master offered to continue his services *pro bono*, which the Court accepted with gratitude. [Doc. No. 108]. This modification is the only change to the Order of Reference.

[2] The "Duties and Powers" section provides various mechanisms for the Special Master to use in overseeing implementation of and compliance with the terms of the Consent Decree. [Doc. No. 35].

2

appointment of a Special Master, the terms of the Order of Reference, including the "Duties and Powers" provision, were invalidated because "the only basis for appointment of a Special Master that ever existed was the parties' agreement for the appointment . . ." [Doc. No. 110]. The Court disagrees. While the parties in this case initially agreed to the appointment of a Special Master, the Order of Reference explicitly stated that the Special Master's responsibilities and powers were ordered not only in accordance with the agreement, but also "pursuant to Fed. R. Civ. P. 53(c) . . ." [Doc. No. 35].

Rule 53(a)(1) provides that a court may appoint a master only to:

> "(A) Perform duties consented to by the parties; (B) hold trial proceedings and make or recommend findings of fact on issues to be decided by the court without a jury if appointment is warranted by (i) some exceptional condition, or (ii) the need to perform an accounting or resolve a difficult computation of damages; or (C) address pretrial and post-trial matters that cannot be addressed effectively and timely by an available district judge or magistrate judge in the district."

Special Master Bieder's appointment is proper under Rule 53(a)(1)(B)(i), which allows a court to appoint a master if warranted by an "exceptional condition." Although court congestion, delay, and complexity of issues are generally not considered exceptional conditions under Rule 53(a)(1)(B)(i), see La Buy v. Howes Leather Co., 352 U.S. 249, 259, 77 S. Ct. 309 (1957), "there is considerable room for appointing special masters when the

3

purpose of the master is to enforce a judicial decree." Cronin v. Browner, 90 F. Supp. 2d 364, 377 (S.D.N.Y. 2000) (collecting cases). In Cronin, the Court found the requisite "exceptional condition" under Rule 53 to be met where "close monitoring [was] necessary [given] the limited progress that has been made thus far in the implementation of the Consent Decree," and where "the special master would be better positioned than this Court to perform the monitoring necessary to ensure compliance, given his time availability and expertise." Id. at 377-78.

In this case, Special Master Bieder is significantly better positioned than this Court to monitor compliance with the Consent Decree and the 2004 Order. He has overseen all aspects of this case since his appointment seven years ago. On these contempt motions alone, Special Master Bieder has held hearings on twenty-six individual dates. The subject of the consent decree and the 2004 Order – the relationship between the citizens of Hartford and the Hartford Police Department – is just the type of "polycentric problem that cannot easily be resolved through a traditional courtroom-bound adjudicative process" making referral to a Special Master especially appropriate under the "exceptional condition" requirement of Rule 53. See Hart v. Community School Bd. of Brooklyn, 383 F.Supp 699, 765 (E.D.N.Y. 1974), aff'd, 512 F.2d 37 (2d Cir. 1975).

In addition, contrary to Defendants' assertions, the Court's

4

power to appoint a Special Master in this case is not solely derived from Rule 53. It is well settled that a federal court has the inherent power to appoint an agent to oversee the implementation of its consent decrees. In re Peterson, 253 U.S. 300, 312-13, 40 S.Ct. 543, 547 (1920). Courts have an affirmative duty to protect the integrity of their decrees, a duty that arises "where the performance of one party threatens to frustrate the purposes of the decree." Berger v. Heckler, 771 F.2d 1556, 1568 (2d Cir. 1985). Although Rule 53(a)(1)(B)(i) requires that the appointment of a Special Master be the exception rather than the rule, it does not "terminate or modify the district court's inherent equitable power to appoint a person . . . to assist it in administering a remedy." Ruiz v. Estelle, 679 F.2d 1115, 1161 (5th Cir. 1982). Rather, "[b]eyond the provisions of [Fed. R. Civ. P. 53] for appointing and making references to Masters, a federal district court has the inherent power to supply itself with [a special master] for the administration of justice when deemed by it essential." Id. at 1161 n. 240, citing Schwimmer v. U.S., 232 F.2d 855, 865 (8th Cir. 1956), cert. denied, 352 U.S. 833, 77 S.Ct. 48 (1956) (citation omitted)). A court's need to protect the integrity of its decree "justifies any reasonable action taken by the court to secure compliance." Berger v. Heckler, 771 F.2d at 1568; see also Local 28 of Sheet Metal Workers v. EEOC, 478 U.S. 421, 482, 106 S.Ct. 3019, 3053 (1986) (recognizing the

5

"difficulties inherent in monitoring compliance with the court's orders," thus finding the appointment of an administrator "well within the District Court's discretion"); Juan F. v. Weicker, 37 F.3d 874 (2d Cir. 1994) (appointment of a court monitor to oversee consent decree proper "because of the difficult issues involved, as well as the importance to the plaintiff class of enforcing the decree".).[3]

Once appointed, a Special Master has "broad discretion to regulate the manner in which he will complete his duties." United States v. Clifford Matley Family Trust, 354 F.3d 1145, 1161 (9th Cir. 2004), see also Schneider v. Feinberg, 345 F.3d 135, 149 (2d Cir. 2003). Rule 53(c) provides that "[u]nless the appointing order expressly directs otherwise, a master has the authority to regulate all proceedings and take all appropriate measures to perform fairly and efficiently the assigned duty."

In sum, the Order of Reference issued in this case, including the terms under the "Duties and Powers" section, is proper under

---

[3] The circumstances of In re: Bituminous Coal Operators' Ass'n., Inc., 949 F.2d 1165 (D.C. Cir. 1991, which Defendants cite as an example of where a district court's order of reference to a special master was improper, cannot be compared to the instant case. In Bituminous, a district court faced with a heavy criminal docket transferred a civil case entirely over to a Special Master, stating: "It is my intention that the special master shall, for all purposes henceforth until the order of reference is withdrawn, function as a surrogate judge in this case and rule on matters which may be collateral, may be substantive and may be interlocutory of any description, until such time as I see fit to withdraw the reference. . . . [W]e are now engaged in a war on drugs. And we all have to make sacrifices. And your sacrifice, although I'm not at all sure that it represents a sacrifice at all, is to present your case to [the special master] and not to me." 949 F.2d at 1167. The Circuit Court held that the District Judge had no authority to completely abdicate its role and appoint a Special Master to be its surrogate judge in this case.

6

Rule 53(a)(1)(B) and under this Court's inherent power to ensure compliance with its consent decree. Therefore, the Court re-appoints Special Master Bieder to a one year term in accordance with the terms of this Order of Reference.

Finally, the Court's April 2007 ruling also stated that "Plaintiffs and [D]efendants shall each pay one-half of the costs incurred." Defendants request clarification as to whether Plaintiffs' liability for costs commenced at the time of Special Master Bieder's re-appointment on October 1, 2006, or at the time of the Court's ruling on April 13, 2007. To clarify, Plaintiffs' liability for costs began when the Court issued its ruling on April 13, 2007.

                                      SO ORDERED

                                      /s/

                                    ELLEN BREE BURNS
                                    SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this 28th day of November 2007.