UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIA CINTRON, et al. | ) | CASE NO. 3:69-CV-13578 (KAD) |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS VAUGHN, et al. | ) | APRIL 14, 2023 |
| *Defendants*. | ) | |

**ORDER DENYING [287] MOTION FOR ORAL ARGUMENT; [290] MOTION FOR ORDER TO ALLOW PLAINTIFFS TO FILE REPLY OUT OF TIME; [273] MOTION FOR CONTEMPT; AND GRANTING [280] MOTION TO DISSOLVE ANY CONSENT DECREE**

Kari A. Dooley, United States District Judge:

The parties' familiarity with this matter is presumed. By way of brief history, this case was brought in 1969 in an effort to challenge and ultimately reform the manner and means by which the Hartford Police Department conducted its affairs, particularly in relation to its engagement with and recruitment of people of color in the Hartford community. To everyone's credit and the Hartford community's benefit, the case originally settled in 1973 pursuant to a Settlement Agreement.[1] As disputes between the parties continued to arise on occasion, the Settlement Agreement was modified in 2010 (the "Modification"). The Court agrees with Defendants (and Plaintiffs do not challenge) that the 2010 Modification was designed to significantly curtail and ultimately bring about the end to this now fifty-four-year-old litigation. *See* Defs.' Opp'n at 4. This intention is made manifest by the Court's order to show cause by October 31, 2014 "why any Consent Decree or any continuing duties arising out of the Settlement Stipulation approved by the

---

[1] The parties have long disputed whether the 1973 agreement, as entered by the Court, constituted a "Consent Decree" or merely a "Settlement Stipulation" over which the Court retained jurisdiction. *See, e.g.*, Ruling on Defs.' Objs. to Special Master's Report on Mot. for Contempt at 3 n.1, ECF No. 123-2; Defs.' Opp'n to Mot. for Contempt ("Defs.' Opp'n") at 5 n.3, ECF No. 279. The Court need not resolve this dispute in adjudicating the instant motions and refers to the 1973 agreement as a "Settlement Agreement."

1

Court in 1973 should not be dissolved." *See* Order to Show Cause, ECF No. 229. While the show cause date was subsequently extended, the intent remains apparent.

Before turning to the Motion for Contempt and the Motion to Dissolve Any Consent Decree, the Court addresses Plaintiffs' Motion for Oral Argument and Motion for Order to Allow Plaintiffs to File Reply Out of Time. By way of background: Plaintiffs filed the instant motion for contempt, which consisted of a ten-page memorandum in support without any supporting exhibits, on October 10, 2022—the eve of the sunset of the 1973 Agreement and 2010 Modification. *See* Mot. for Contempt, ECF No. 273. Defendants timely filed their objection to Plaintiffs' motion on October 31, 2022, *see* ECF No. 279, to which Plaintiffs did not reply. The parties then participated in a settlement conference on December 6, 2022 but failed to reach an agreement. *See* ECF Nos. 282–83. No further action occurred in the case for over three months, at which time the Court indicated to counsel via email and in response to an inquiry from counsel that Plaintiffs' motion for contempt would be taken up on the papers in due course, and "[i]f any party would like the Court to hear oral argument on the motion, please let [the Court] know." *See* Mot. Oral Arg. Ex. 1, ECF No. 287-1. Neither party timely responded with a request for oral argument. Weeks after the Court's inquiry, on March 23, 2022, Plaintiffs filed a motion for the appointment of a special master, indicating that "testimony will be necessary as to the allegations of violations and the nature of such violations" alleged in the motion for contempt. Mot. for Appointment of Special Master at 3, ECF No. 284. The Court denied the motion, noting that "the Court disagrees that an evidentiary hearing is necessary to resolve the motion for contempt" and that the motion for contempt would be decided "on the papers." Order, ECF No. 286.

More recently (and approximately six months after filing their factually unsupported motion for contempt), Plaintiffs filed motions seeking both oral argument and the opportunity to

2

file an untimely reply to Defendants' Objection to the motion for contempt. *See* Mot. Oral Arg. at 3–4; Mot. to File Reply at 3, ECF No. 290. Therein, Plaintiffs aver that their motion for contempt "as necessity, was relatively bare bones at the time of filing due to excessive turnover of personnel at the plaintiffs counsel's sole practitioner office" and to the "failure of negotiations and discussions with the defendants." Mot. to File Reply at 3–4. Plaintiffs seek to offer "an extensive factual reply to the defendant's objection" to the motion for contempt. *Id.* at 3. Plaintiffs' motions come too late. Plaintiffs' reply was due just shy of five months ago. They neither sought an extension of time within which to file the reply nor explained their failure to do so. It is only now, after negotiations failed and the Court indicated that a decision on Plaintiffs' motion for contempt was imminent, that Plaintiffs have attempted to supplement their motion.

Further, the Court agrees with the Defendants' observation that a reply brief (which is limited to ten pages and must only address the issues raised in the opposition) is not the vehicle for supplementing or curing the factual deficiencies of Plaintiffs' "bare bones" motion for contempt. *See* Defs.' Obj. to Mot. to File Reply at 2–5, ECF No. 291; *D'Alessandro v. Arrow Pharmacy Holdings, LLC*, No. 3:20-CV-536 (SVN), 2023 WL 1967245, at *5 (D. Conn. Feb. 13, 2023) ("[I]t is well established that a party cannot 'attempt to cure deficiencies in its moving papers' by introducing new evidence in its reply when the effect would be to deprive the opposing party of any opportunity to respond." (quoting *Travelers Indem. Co. v. Excalibur Reins. Corp.*, No. 3:11-CV-1209 (CSH), 2013 WL 4012795, at *2 (D. Conn. Aug. 5, 2013))); D. Conn. L. Civ. R. 7(d) ("A reply memorandum must be strictly confined to a discussion of matters raised by . . . the memorandum to which it replies."). Nor are Plaintiffs entitled to oral argument or an evidentiary hearing to present "factual and written context" to their motion, *see* Mot. Oral Arg. at 3–4, where they provided no evidentiary or factual support for their allegations in their initial

3

motion, *see Silva v. City of Bridgeport*, No. 3:01CV119 (DFM), 2006 WL 680460, at *1 (D. Conn. Mar. 14, 2006) (noting that "[t]here is no absolute right to a hearing in the context of a motion for contempt" and denying the plaintiff's request for an evidentiary hearing where the "plaintiff did not submit any evidence to support the motion").

Accordingly, Plaintiffs' Motion for Oral Argument, ECF No. 287, is DENIED, and Plaintiffs' Motion for Order to Allow Plaintiffs to File Reply Out of Time, ECF No. 290, is DENIED.

The Court now turns to Plaintiffs' motion for contempt. Plaintiffs assert that Defendants should be found in contempt of the 1973 Agreement and 2010 Settlement Modification because Defendants allegedly failed to: 1) conduct an immediate investigation into certain instances of officer discharge of firearms, 2) "effectively utilize" various methods to form the police department to reflect the Hartford community, and 3) always take sworn statements from citizens seeking to obtain arrest warrants. *See* Mot. for Contempt at 2–7. Plaintiffs' motion is both procedurally flawed and substantively meritless. First, significant to this Court's determination on the motion for contempt, the 2010 Modification provided:

> Procedure for Filing Any Contempt Motions. The parties agree that before any contempt proceedings may be commenced, the parties will meet and confer in an effort to: determine whether a dispute exists; determine whether the dispute may be resolved without intervention by the court; and, in the event that the parties cannot resolve the dispute amongst themselves, to clearly define the issues to be resolved by the court in any such proceeding. Further, the parties agree that, after meeting amongst themselves and before any motion for contempt may be filed by either party, the parties must attempt mediation before U.S. Magistrate Judge Joan Glazer Margolis or, if she is unavailable or unwilling to do so, another Magistrate Judge or Parajudicial Officer appointed by the Court. If the parties fail to reach agreement after such mediation, either party may file a contempt motion. The parties further agree that for a matter to arise to the level requiring contempt proceedings, the alleged violation must be of a serious nature and that, for example, the Defendants' alleged failure to provide members of the Civilian Police Review Board or the Firearms Discharge Board of Inquiry with a document (or similar de minimis violation) does not provide a basis for contempt.

Settlement Agreement at 4–5, ECF No. 227. Plaintiffs summarily assert that they have complied with these provisions "since 2015 to no avail." Mot. for Contempt at 2. The record belies this claim. As recently observed by Judge Margolis:

> Nearly four years ago, on November 20, 2018, plaintiffs filed a Motion for Contempt (Dkt. #253), after which two settlement conferences were held before this Magistrate Judge (Dkts. ##259-60, 267), consistent with the Settlement Agreement filed back on February 18, 2010 (Dkt. #227; see also Dkts. ##254-58, 265). . . . On July 19, 2019, Judge Bryant denied the pending Motion for Contempt, "without prejudice to refiling . . . after mediation before Judge Margolis is fully exhausted to no avail . . . ." (Dkt. #266). There was no further activity in this file from the last settlement conference on September 24, 2019 except for two jointly filed motions to prolong the sunset date of the settlement, first until October 31, 2020, due to continuing settlement discussions between counsel, and then until October 31, 2022, due to legislation passed by the Connecticut General Assembly for police reforms after the murder of George Floyd. (Dkts. ##268-71). Three weeks prior to the sunset of the settlement, on October 10, 2022, plaintiffs filed their Motion for Contempt. (Dkt. #273).

Oct. 31, 2022 Order, ECF No. 278. At no point between 2019 and the filing of the instant motion for contempt did the parties seek to re-engage with Judge Margolis in an effort to avoid the need for court involvement or the filing of a contempt motion.

The motion for contempt can be denied on this basis alone. Where the parties agree to be bound by the terms of a Settlement Agreement, the Court will enforce the agreement as written so as to give effect to the parties' intent. *See Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) ("A settlement agreement is a contract that is interpreted according to general principles of contract law."). Plaintiffs' unilateral attempted end run around the carefully negotiated provision regarding the manner and means by which motions for contempt may be brought before the Court cannot be countenanced.[2]

---

[2] Indeed, Plaintiffs' eleventh-hour motion for contempt, filed without any attempt to satisfy the pre-filing requisites, appears to be a straightforward, though ultimately doomed effort, to extend this litigation beyond the contemplated sunset date of October 31, 2022.

Notwithstanding the above, the Court has also reviewed the parties' submissions and finds that Plaintiffs have failed to establish that a contempt finding is warranted here. "A district court has the inherent power to hold a party in civil contempt in order to enforce compliance with an order of the court." *McCoy v. Belmont*, No. 3:85CV465(EBB), 2007 WL 9736020, at *16 (D. Conn. July 10, 2007), *aff'd sub nom. McCoy ex rel. McCoy v. Belmont*, No. 07-3403-CV, 2008 WL 2951954 (2d Cir. July 30, 2008)). However, "[a] contempt order is a potent weapon, to which courts should not resort where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Perez v. Danbury Hosp.*, 347 F.3d 419, 425 (2d Cir. 2003) (quotations omitted). Therefore, "a district court's contempt power is narrowly circumscribed." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 142 (2d Cir. 2014) (quotations omitted).

"To establish contempt, 'a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Perez*, 347 F.3d at 423–24 (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir.1995)). "A clear and unambiguous order is one that 'leaves no uncertainty in the minds of those to whom [the order] is addressed.'" *Gucci Am., Inc.*, 768 F.3d at 142–43 (quoting *Perez*, 347 F.3d at 424). "Thus, unless the parties can 'ascertain from the four corners of the order precisely what acts are forbidden,' the order cannot form the basis for contempt." *Id.* at 143 (quoting *King*, 65 F.3d at 1058).

Plaintiffs first allege that Defendants failed to conduct an immediate investigation of officer firearm discharges in violation of the time periods set forth in Hartford Police Department General Orders 1-21 and 1-22, which were incorporated by reference into the 2010 Modification. *See* Mot. for Contempt at 2–4. Without providing additional facts or context, Plaintiffs allege that, in four instances, Defendants refused to conduct an independent investigation until after the State

6

of Connecticut Police concluded its criminal investigation for fear of interfering with the State Police investigation. *Id.* at 3. However, despite alluding to the "time periods" set out in Orders 1-21 and 1-22, Plaintiffs do not point to any specific timeline or requirement with which Defendants failed to comply. Perhaps most importantly, Plaintiffs offer no evidence to support their conclusory allegations. *See Latino Officers Ass'n City of N.Y., Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009) ("A contempt order is warranted only where *the moving party* establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." (emphasis in original) (quotations omitted)). Moreover, Plaintiffs have failed to establish that Defendants have not diligently attempted to comply in a reasonable manner; indeed, Defendants have alleged that in all circumstances, except for the small subset of instances challenged by Plaintiffs, they have diligently attempted to comply with the requirements to the satisfaction of Plaintiffs. *See* Defs.' Opp'n at 11. And in those four instances about which Plaintiffs complain, Defendants have responded that they diligently attempt to undertake and complete their independent investigations as soon as they are reasonably capable of doing so once they have gained access to necessary evidence. *Id.* at 12; *see Coan v. Dunne*, 602 B.R. 429, 443 (D. Conn. 2019) ("Perfect compliance is not required' to avoid a finding of contempt, and [the defendant's] compliance—though belated—is reasonable enough under the circumstances here not to warrant a finding of contempt." (internal citation and quotation omitted)). Plaintiffs have presented no evidence that undermines these assertions. *See Latino Officers Ass'n*, 558 F.3d at 164 (noting that "the relevant inquiry is not whether defendants adequately rebutted plaintiffs' evidence, but rather, whether plaintiffs' evidence alone was adequate to establish" contempt).

Next, Plaintiffs argue that Defendants have violated provisions of the 1973 Agreement and 2010 Modification by failing to "effectively" form a core of police officers that accurately reflects

the Hartford community. *See* Mot. for Contempt at 4–6. They seek, as a remedy for this violation, an "injunction mandating that the next five classes of Hartford Police Officers consist of at least 90% persons who either [sic] identify as nonwhite individuals and have lived in the City of Hartford for a considerable period of their lives, with such period to be proscribed by the Court." *Id.* at 7. Again, Plaintiffs fail to identify specific, clear, and unambiguous provisions of the Settlement Agreement or Modification that Defendants have *violated*. Instead, Plaintiffs contend that Defendants failed to "*effectively* utilize the various modes of adequately forming their police department to reflect the Hartford community." *Id.* at 6 (emphasis added). However, the word "effective" or "effectively" does not appear in any of the provisions that Plaintiffs rely upon, and the Court may not impose such an ambiguous benchmark on Defendants in a contempt proceeding. *See Perez*, 347 F.3d at 424 ("[C]ourts must abide by the express terms of a consent decree and may not impose supplementary obligations on the parties even to fulfill the purposes of the decree more effectively."). Moreover, Defendants have put forth ample evidence of their efforts to increase minority recruitment and promotions, many of which appear to have been successful. *See* Defs.' Opp'n at 19–21; Defs.' Opp'n Exs. 3–4; *cf. Latino Officers Ass'n*, 558 F.3d at 165 ("In the absence of clear and convincing evidence of defendants' noncompliance, and in light of the fact that defendants have taken these affirmative steps to curb employment discrimination in the NYPD . . . we conclude that plaintiffs have failed to meet their burden of showing why defendants should be held in contempt.").

Finally, Plaintiffs allege that Defendants violated section two, paragraph fourteen of the original 1973 Agreement, which provides that "The Hartford Police Department shall assist persons in obtaining warrants for the arrest of suspects by taking sworn complaints and forwarding them to the prosecutor," because Hartford Police Officers do not take sworn complaints from *all*

persons—instead only taking them when the officer determines that there is probable cause. *See* Mot. for Contempt at 6–7. However, the language quoted by Plaintiffs does not clearly and unambiguously require police to take sworn complaints and submit them to the prosecutor in all circumstances. Indeed, as Defendants observe, such a requirement would unquestionably be impermissible: police officers have an independent legal obligation to assure that there is probable cause to support a warrant application, *see Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994), and therefore must be free to exercise independent judgment in determining whether probable cause exists, *cf. Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 292 (2d Cir. 2008) (noting the unreasonableness of requiring a defendant, "on pain of contempt, to arrive at a correct answer" where there is a "substantial question as to the legality" of the challenged conduct). A contrary conclusion would mean that this provision of the Settlement Agreement was intended to reduce Hartford Police Officers to mere scribes and conduits for citizen complaints.

Accordingly, Plaintiffs have failed to establish by clear and convincing evidence that Defendants violated any provision of the 1973 Settlement Agreement or 2010 Modification. Plaintiffs' motion for contempt, ECF No. 273, is DENIED for this reason, as well.

In addition, there being no further issues brought before the Court, there is no reason to further extend the parties' obligations under the 1973 Settlement Agreement as amended by the February 2010 Modification. Judge Burns' February 2010 Order to Show Cause, issued consistent with the terms of the 2010 Modification, made clear the Court's belief that the Agreement should sunset in 2014. Although this deadline has since been extended, it has long been the intent of the Court and the parties to "resolve fully and finally" this now fifty-four-year-old case. *See* 2010 Modification ¶ 21, ECF No. 227. Accordingly, Defendants' Motion to Dissolve Any Consent

Decree, ECF No. 280, is GRANTED. The parties shall have no continuing duties or obligations thereunder effective immediately.

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of April 2023.

                                            */s/ Kari A. Dooley*
                                            KARI A. DOOLEY
                                            UNITED STATES DISTRICT JUDGE