## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARIA CINTRON,<br>LA CASA DE PUERTO RICO, ET AL<br>PLAINTIFFS<br><br>v.<br><br>THOMAS VAUGHAN, ET AL<br>DEFENDANTS | CIVIL ACTION NO.<br>3:69CV13578 (EBB) (JGM)<br><br><br><br><br>April 21, 2023 |

## MOTION TO RECONSIDER ORDER DENYING THE PLAINTIFFS' MOTION FOR CONTEMPT AND DISSOLVING ANY CONSENT DECREE

### I. INTRODUCTION

Pursuant to D. Conn. L. Civ. R. 7(c), the Plaintiffs, Maria Cintron, La Casa De Puerto Rico Et. Al., hereby respectfully requests reconsider its decision (ECF No. 292) regarding the plaintiff's *Motion for Contempt* (ECF No. 273).

### II. FACTS AND PROCEDURAL POSTURE

This matter was commenced in November, 1969 resulting in a Consent Decree issued by this Court in June, 1973. It essentially made three claims against the defendants sounding in: (1) Excessive use of force by police upon members of the community; (2) Discrimination in hiring

1 |

and promotion within the Hartford Police Department; and (3) Inadequate protection of citizens of Hartford by the Hartford Police Department.

In 2010, the parties agreed to a supplemental agreement which would affect the 1973 agreement. Per such agreement, "The parties agree that the Court may enter an Order to Show Cause why any Consent Decree should not be dissolved." 2010 Supplemental agreement § 6, at 3 (footnote omitted). In 2018, the Plaintiffs filed a Motion for Contempt alleging that the defendants failed to uphold provisions of the 2010 Supplement. In July of 2019, Judge Bryant denied the pending Motion for Contempt without prejudice. (ECF No. 266). Following legislation passed by the Connecticut General Assembly for police reforms after the murder of George Floyd, the parties jointly filed motions to prolong the sunset date of the settlement contained within the 2010 Supplement, first until October 31, 2020, due to continuing settlement discussions between counsel, and then until October 31, 2022. (ECF Nos. 268-71). In October of 2022, the plaintiffs filed their motion for contempt alleging, *inter alia,* a failure to promptly investigate incidences of firearms discharge by police officers in the City of Hartford, and a failure to take affirmative steps in the interest of forming a core of police officers which accurately reflect the Hartford Community.

In the time since the Motion for Contempt (ECF No. 273) was filed, the plaintiffs filed a motion for the appointment of a special master (ECF No. 284) which was denied by this Court

2 |

(ECF No. 286). After the Court denied the plaintiffs the opportunity to present witnesses and evidence to a special master for factual determinations, the plaintiffs made a motion for a hearing in oral argument (ECF No. 287) to argue to the Court as to why the defendants should be held in contempt and why the consent decree should not be sunset. In the alternative, the plaintiffs requested leave to file a reply with the Court to address contextual deficiencies in their motion and to address the defendant's extensive objection to the plaintiff's motion. Those motions too were denied (ECF No. 292). Seven days ago, this Court entered an order to dissolve any Consent Decree in this matter. *Id.*

### III. ARGUMENT

The plaintiffs' argument for why this Court should reconsider its ruling contained within ECF No. 292 is twofold: (1) the plaintiff's did in fact reach out to defense counsel to contact Judge Margolis prior to filing their *Motion for Contempt*, in accordance with the Consent Decree; and (2) proof of contentions made is clearly (a) fact driven and (b) of critical importance to the issue of police-community relations in the capital city of Hartford.

Motions for reconsideration may be granted when "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *U.S. Bank Tr., N.A. v. Walbert*, 3:17-cv-00991 (CSH), 2017 U.S. Dist. LEXIS 171051 *3-4 (D. Conn October 16,

3 |

2017) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); D. Conn. L. Civ. R. 7(c). "[M]ajor grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, []the need to correct a clear error or **prevent manifest injustice.**" *Id.* (emphasis added) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992)).

To the extent possible, attachments herein submitted set forth the factual disputes in this case as much as possible.

### 1. The Plaintiff Reached Out to the Defendants for an Appearance with Judge Margolis but Were Assured By the Defendants that Such Appearance Was Not Necessary.

In this Court's order No. 292, the Court found it nearly dispositive that the parties did not contact Judge Margolis in an effort to avoid the need for court involvement or the filing of a contempt motion, noting "[t]he motion for contempt can be denied on this basis alone." No. 292 at 5. However, the parties have had correspondence in the time since 2019, with most recently, the plaintiff suggesting that the parties contact Judge Margolis, as set forth below and in Exhibits A, B and C. Rather than take the plaintiffs' request as serious, the defendants stonewalled, presumably killing the clock until the sunset date of October, 2022. A fundamental foundation for this Court's decision is based in the inaccurate depiction of the facts since 2019. As such, the Court should reconsider its order.

4 |

Firstly, any lapse in communication there may have been between 2019 and the present day can be attributed, at least in substantial part, to the COVID-19 pandemic limiting the availability of the parties to communicate, as at that time neither party was certain whether society as we knew it would be forever altered, and whether the institutions relied on would persist. Additionally, the Federal Court system was virtually shut down for almost a full year, limiting any availability to meet with Judge Margolis or any official of the Court for that matter.

Secondly, on July 1, 2022, plaintiffs' counsel contacted defense counsel with respect to the Hartford Police Department's failure to achieve diversity in its core of police officers, cases pending before the firearm's discharge board of inquiry for over a year, and a change in Hartford Police Department Policy and Procedure 1-21. At that time, plaintiffs' counsel informed defense counsel that all three of the above grievances were either direct or incidental violations of the Consent Decree.

On that day, plaintiffs' counsel wrote "I now ask that you contact Magistrate Margolis so that we may meet to attempt to resolve these issues and one or two more that have arisen such as a change in ammunition as set forth in Cintron." Ex. A. Defense counsel then responded to plaintiffs' counsel stating that "[t]he parties did, in fact, meet with Judge Margolis and, in my opinion, resolved any remaining issues." Ex. B. The letter goes on to request clarification as to specific instances of violations of the Consent Decree. Plaintiffs' counsel replied to such inquiry

5 |

by defense counsel with an extensive reply detailing specifically which issues the plaintiffs had identified in their July 1, 2023 letter. The plaintiffs ended correspondence in their September, 2023 letter by requesting the defendants advise as to next steps. Ex. C.

With the sunset date rapidly approaching and no correspondence from opposing counsel, the plaintiffs had no choice but to petition this Court for judicial intervention for the violations of the Consent Decree.

Therefore the plaintiffs' Motion for Contempt was *not* a "unilateral attempted end run around" of the provisions set forth by the parties in the consent decree. Rather, it was the result of the defendants electing to remain silent to await the sunset date of the Consent Decree, and a failure by the defendants to uphold the Consent Decree at first instance.

## 2. Proof of Contentions Made is Clearly (a) Fact Driven and (b) Of Critical Importance to the Issue of Police-Community Relations in the Capital City of Hartford

On the issue of the failure of the Hartford Police Department to effectively form a core of police officers which accurately reflect the Hartford Community, this Court ruled that the since the plaintiff did not identify a specific, clear and unambiguous provision of the Consent Decree, the motion for contempt must be denied, ECF No. 292 at 8, and that the Court would not impose an "ambiguous benchmark" on the defendants in a contempt proceeding. *Id.*

6 |

While it is not an explicit requirement of the Consent Decree, the Original Agreement § 3 ¶ 1 stated that "[i]t is the desire and intent of the City of Hartford to continue and <u>improve its affirmative action plain to recruit policemen in the appropriate labor market to reflect properly the minority community.</u>" (emphasis added). Utilizing recruitment tools to recruit and retain minority applicants was *always* the intention of the parties as expressed in correspondence and previous Motions for Contempt over the years.

The Court must enforce the agreement so as to give effect to the parties' intent. *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007). The parties clearly intended for the City of Hartford to take affirmative steps to make a police core more accurately reflecting the minority community and in fact the community of Hartford generally. The plaintiff submits that an effective utilization is not a specific quota or ambiguous benchmark; the plaintiffs are asking the defendants to do the absolute bare minimum when it comes to upholding the intent of the parties. The latest statistics on the matter reflect that the defendants have failed miserably in upholding the intent of the Consent Decree.

A study conducted by a team of statisticians at Police Scorecard, a nonprofit organization dedicated to releasing figures to ensure police accountability, demonstrates that the Hartford Police Department core of officers is made up of only about twelve (12) percent black officers, and nineteen percent (19) Latinx/Hispanic officers. POLICE SCORECARD,

7 |

SCHULMAN & ASSOCIATES
ATTORNEYS AT LAW
10 GRAND STREET • HARTFORD, CONNECTICUT 06106 • (860) 522-2960 • FAX (860) 522-0130 • JURIS NO. 54691

https://policescorecard.org/ct/police-department/hartford (last visited April 21, 2023); *See also* Deidre Montague, *Hartford City Counsel addressing city's racist past*, HARTFORD COURANT, April 14, 2023 (quoting Lt. Aaron Boisvert), https://www.courant.com/2023/04/14/hartford-city-council-addressing-citys-racist-past-and-policing/. This is in a city with a demographic makeup of forty-five (45) percent Hispanic residents and thirty-six (36) percent black residents. *U.S. Census Bureau*, Quick-Facts, Hartford City, Connecticut (2022), https://www.census.gov/quickfacts/fact/table/hartfordcityconnecticut#.

      The plaintiffs assert that the defendants have not even minimally sought the assistance of community organizations for the assistance in identifying potential city residents of color for police officer positions or assisting persons so identified to prepare for testing for such positions. The defendants' position has been "they can call us if they want the help." Indeed, within the past year, plaintiffs' and the general community did not even know a recruitment period was underway until it was already over. Ex. D; Ex. E. Additionally, it is clear that the defendants' have orchestrated an environment which is not conducive to hiring or retaining officers. Ex. F. Since 2016, the City of Hartford has slashed budgets, cut educational programming for minorities who may wish to become Hartford City Police Officers, and attacked police union contracts to make it infeasible for Hartford residents to either become police officers or stay in the force. *Id.*

SCHULMAN & ASSOCIATES
ATTORNEYS AT LAW
10 GRAND STREET • HARTFORD, CONNECTICUT 06106 • (860) 522-2960 • FAX (860) 522-0130 • JURIS NO. 54691

This clear violation has had an observable and despicable effect on residents in the city of Hartford. One citizen, Sherry Frazier, recounts being humiliated and talked down to by officers insensitive to her concerns and unknowledgeable of her community. Ex. G. Community activists and individuals actually in the streets recount witnessing incidences of police misconduct, intimidation and excessive force towards the community. Ex. E ¶ 11; Ex. G ¶ 3. Corrie Betts, the president of the greater Hartford branch of the National Association for the Advancement of Colored People (NAACP), a named plaintiff in the instant class action lawsuit, has expressed that "[the NAACP is] deeply concerned that this dissolution of the consent decree will go in a step backwards for the city of Hartford and its residents, especially black and brown community members who historically have been targeted by discriminatory policing practices [.]" Deidre Montague, *NAACP branches dislike ending of Hartford police consent decree*, HARTFORD COURANT, April 20, 2023 at 2; Ex. E ¶ 5. Betts recounts an instance where officers from the Hartford police department went to West Hartford, without jurisdiction or proper authority, and confronted Hartford teenagers of color who were simply soliciting donations for their Conard High School Football team. Ex. E ¶ 10. The officers received a mere 10 day suspension without pay for this act of invidious discrimination and heinous racial profiling. *Id.*

In the Hartford Currant article, *supra*, Scot Esdaile expresses the same concern that without the *Cintron v. Vaughn* Consent Decree, police-community relations will continue to

9 |

SCHULMAN & ASSOCIATES
ATTORNEYS AT LAW
10 GRAND STREET • HARTFORD, CONNECTICUT 06106 • (860) 522-2960 • FAX (860) 522-0130 • JURIS NO. 54691

deteriorate at the detriment of the public. Deidre Montague, *NAACP branches dislike ending of Hartford police consent decree*, HARTFORD COURANT, April 20, 2023 at 2. (referring to two pertinent cases of police misconduct within the Hartford Police department and expressing community sentiment to the sunset of the Consent Decree) ("Violence is out of control in our city, and this particular decree should not be [sic] sunseted. We feel that it's not an adequate solution I think the community doesn't feel that it's an adequate solution.").

This Consent Decree is immeasurably important to the Hartford community. The Hartford City Council very recently voted unanimously to not sunset or dissolve the consent decree. *Id.* (quoting T.J. Clarke II., who introduced the resolution to extend the consent decree); Dave Collins, *Judge Ends Hartford Police Consent Decree Despite Concerns*, NBC CONNECTICUT (April 17, 2023) ("Just last month, the city council passed a resolution calling for an indefinite extension of the consent decree until the police department fully complies with it."), https://www.nbcconnecticut.com/news/local/judge-ends-hartford-police-consent-decree-despite-concerns/3015203/. This political action demonstrates the importance this Consent Decree has on the citizens of the City of Hartford. Despite this, community groups are already expressing distrust between the Hartford Police Department and the community that provisions of the Consent Decree will be upheld. Ex. E ¶ 7

10 |

The effect that the dissolution of this Consent Decree has is grave. While the Consent Decree was in effect, police-community relations were hot and cold, but at least the citizens of Hartford could take solace in the fact that the Hartford Police Department has a mandate to at least attempt to be better for their citizenry.

Dissolving the Consent Decree strips the citizens of the City of Hartford of that solace, fosters mistrust between the police department and the community, and will lead to manifest injustice. The plaintiffs urge this Court to reconsider its decision.

## IV. CONCLUSION

For the foregoing reasons, in light of new data, new developments as to the community sentiment surrounding the *Cintron v. Vaughn* Consent Decree, and to avoid manifest injustice, the Plaintiffs' respectfully request this Court reconsider its decision to deny the plaintiffs' motion for contempt and its decision to dissolve any consent decree.

11 |

*Respectfully Submitted*

*/s/ Sydney T. Schulman*
Sydney T. Schulman, Esq.
Schulman & Associates
10 Grand Street, Second Floor
Hartford, CT 06106
Federal Bar No. ct 00070
*Attorney for Plaintiffs*

## CERTIFICATION

THIS IS TO CERTIFY that on a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing immediately. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Atty. Joseph W. McQuade
Kainen, Escalera & McHale, P.C.
21 Oak Street, Suite 601
Hartford, CT 06106
jmcquade@kemlaw.com

Atty. Howard G. Rifkin
Corporation Counsel
City of Hartford
550 Main St.
Hartford, CT 06103
howard.rifkin@hartford.gov

Atty. Nathalie Feola-Guerrieri
Sr. Assistant Corporation Counsel
City of Hartford
550 Main St.
Hartford, CT 06103
FEOLN001@hartford.gov

/s/ Sydney T. Schulman
Sydney T. Schulman
Schulman & Associates
10 Grand Street, Second Floor
Hartford, CT 06106
Federal Bar No. ct 00070
*Attorney for Plaintiffs*