UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIA CINTRON, | : | CIVIL ACTION NO. |
| LA CASA DE PUERTO RICO, ET AL | : | 3:69CV13578 (KAD) |
| PLAINTIFFS | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS VAUGHAN, ET AL | : | APRIL 27, 2023 |
| DEFENDANTS | : | |

**DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION TO RECONSIDER ORDER
DENYING MOTION FOR ORAL ARGUMENT AND PRESENTATION OF WITNESSES
[DKT. #293] AND PLAINTIFFS' MOTION TO RECONSIDER ORDER DENYING THE
PLAINTIFFS' MOTION FOR CONTEMPT AND DISSOLVING ANY <u>CONSENT
DECREE [DKT. #294]</u>**

The Defendants respectfully submit this Opposition and Objection to two motions

for reconsideration filed by the Plaintiffs on April 21, 2023—specifically, Plaintiffs' Motion

to Reconsider Order Denying Motion for Oral Argument and Presentation of Witnesses

[Dkt. #293] and Plaintiffs' Motion to Reconsider Order Denying the Plaintiffs' Motion for

Contempt and Dissolving any Consent Decree [Dkt. # 294].  Plaintiffs have failed to

meet the high standard necessary to support the granting of a motion for

reconsideration and both motions may be denied.

I.    **BACKGROUND**

This action was commenced in 1969 and alleged Constitutional violations by the

Defendants (at the time, largely, Hartford police officers)[1] on the basis of their race

---

[1] The case was filed and settled prior to the Supreme Court's seminal decision in <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 694 (1978) which found that a municipality could be subject to liability under §1983 for the execution of municipal policies or customs created either by the municipality's lawmakers or by "those who edicts or acts may fairly be said to represent official policy . . ."

and/or ancestry. On or about June 18, 1973, the case was settled pursuant to a Settlement Stipulation with the Court retaining jurisdiction over the case.

In 2010, after prolonged and intensive negotiations before U.S. Magistrate Judge Joan Glazer Margolis, the parties reached a Settlement Agreement that was approved by U.S. District Judge Ellen Bree Burns on February 18, 2010.  Dkt. #277.  In the 2010 Settlement Agreement, the parties specifically agreed to a procedure for filing any contempt motions as follows:

> Procedure for Filing Any Contempt Motions.  The parties agree that before any contempt proceedings may be commenced, the parties will meet and confer in an effort to:  determine whether a dispute exists; determine whether the dispute may be resolved without intervention by the court; and, in the event that the parties cannot resolve the dispute amongst themselves, to clearly define the issues to be resolved by the court in any such proceeding.  Further, the parties agree that, after meeting amongst themselves and before any motion for contempt may be filed by either party, the parties must attempt mediation before U.S. Magistrate Judge Joan Glazer Margolis or, if she is unavailable or unwilling to do so, another Magistrate Judge or Parajudicial Officer appointed by the Court.  If the parties fail to reach agreement after such mediation, either party may file a contempt motion.  The parties further agree that for a matter to arise to the level requiring contempt proceedings, the alleged violation must be of a serious nature and that, for example, the Defendants' alleged failure to provide members of the Civilian Police Review Board or the Firearms Discharge Board of Inquiry with a document (or similar de minimis violation) does not provide a basis for contempt.

2010 Settlement Agreement at ¶9.

The 2010 Settlement Agreement stated that it was a "modification" of the 1973 "Settlement Stipulation" and that "taken together with the 'Settlement Stipulation,' constitutes the complete understanding of the parties and no other promises or agreements shall be binding or modify this Agreement unless in writing and signed by both parties."  2010 Settlement Agreement at ¶18.  The only modifications in writing that

2

are signed by the Parties after February 18, 2010, are the several stipulations requesting that the Order to Show Cause deadline (or "sunset" date) be extended.

On November 20, 2018, Plaintiffs filed a Motion for Contempt. Dkt. #253. In that Motion for Contempt, Plaintiffs argued, inter alia, that Defendants: (i) violated Attachment D to the 2010 Settlement Agreement because the "makeup" of the Hartford Police Department did not reflect sufficient progress on a goal of hiring minority or city resident officers; (ii) violated Attachments B & C of the 2010 Settlement Agreement because, according to Plaintiffs, an administrative investigation of an officer's discharge of a firearm was not completed while the State Police were conducting a criminal investigation of the same incident; and (iii) violated the 1973 Settlement Stipulations by failing to properly assist persons in obtaining warrants for the arrest of suspects by taking sworn complaints and forwarding them to the prosecutor. After conferring amongst themselves, counsel for the parties met with U.S. Magistrate Judge Margolis on April 8, 2019, and discussed the various issues raised in the 2018 Motion for Contempt in an effort to resolve or narrow such issues. On July 19, 2019, Judge Bryant issued her Memorandum of Decision denying Plaintiffs' Motion for Contempt, subject to renewal, because the parties were still in mediation before Judge Margolis. Dkt. #266. On July 26, 2019, in response to Judge Margolis's Order, the parties submitted a 12-page status report laying out various issues and reporting whether such issues were resolved. The majority of such issues had been resolved through discussions between counsel. On September 24, 2019, Judge Margolis conducted a telephonic settlement conference with counsel to discuss any issues that had not been resolved according to

the status report.  Dkt. #267.  Given the period of time that passed thereafter, defense counsel considered any outstanding issues to have been resolved.

On July 1, 2022, Plaintiffs' counsel wrote to the undersigned and repeated the contention that the Hartford Police Department "still does not come close to reflecting the community it serves with respect to diversity" and "there are still one of more cases before the Firearms Discharge Board of Inquiry that are old one year or longer."  Exhibit A to Dkt. 294.  In other words, Plaintiffs' counsel reiterated some of the issues raised in the 2018 Motion for Contempt that had been denied by Judge Bryant.  On July 8, 2022, defense counsel wrote back to Plaintiffs' counsel, reminding Plaintiffs' counsel of the dictates of the dispute resolution procedures contained in the 2010 Settlement Agreement and requesting additional information in order to determine whether any dispute existed between the parties, whether any identified dispute could be resolved amongst the parties and, in the absence of resolution between the parties, whether the issues could be clearly defined for court resolution.  Exhibit B to Dkt. #294.  In a letter dated September 15, 2022 (but received by defense counsel on or about September 20, 2022), Plaintiffs' counsel identified four (4) cases before the Firearms Discharge Board of Inquiry that allegedly were in dispute and conceded that achieving a police department that accurately reflects the community it serves is not a "requirement" of either the 1973 Settlement Stipulation or the 2010 Settlement Agreement.  Exhibit C to Dkt. #294.

On October 10, 2022 (21 days prior to the sunset date of October 31, 2022), the Plaintiffs filed their Motion for Contempt.  Dkt. #273.  On that same day, Plaintiffs filed papers nominally seeking to show good cause why any consent decree in this case

4

should not dissolve.  Dkt. #276.  On October 31, 2022, Judge Margolis granted Plaintiffs' motion designed to prevent the "sunset" of this case, "in limited part for such period of time as is necessary to either resolve or rule upon the issues raised in the pending Motion for Contempt, and without prejudice to the Court reconsidering what is an appropriate sunset date for any or all of the provisions set forth in the Consent Decree and Settlement Agreement."  Dkt. #278.  On October 31, 2022, Defendants filed their Objection to the Motion for Contempt (Dkt. #279) as well as their Motion to Dissolve any Consent Decree (Dkt. #280).  Plaintiffs filed no reply brief to Defendants' Objection to the Motion for Contempt.

On March 7, 2023, the Court communicated with counsel for the parties indicating that the Court intended to take up Plaintiffs' Motion for Contempt on the papers and invited counsel to request oral argument, if appropriate.  No party requested oral argument.  On or around March 22, 2003, Plaintiffs filed a Motion for Appointment of a Special Master.  Dkt. #284.  The Court denied such motion on March 30, 2023 (Dkt. #286) and stated, in part:  "The Court disagrees that a Special Master should be appointed to conduct an evidentiary hearing on Plaintiffs' motion for contempt, as the Court disagrees that an evidentiary hearing is necessary to resolve the motion for contempt.  The Court has taken the motion for contempt under advisement and will decide it on the papers."  Plaintiffs did not seek reconsideration of such order.  On April 5, 2023, Plaintiffs filed a Motion for Oral Argument (Dkt. #287).  On April 12, 2023, Plaintiffs filed a motion seeking to file a late reply brief (Dkt. #290) in support of their Motion for Contempt.  On April 14, 2023, the Court issued its Order denying the Motion for Oral Argument, Motion for Order to Allow Plaintiffs' to File Reply Brief Out of Time

and Motion for Contempt and Granting Motion to Dissolve Any Consent Decree.  Dkt. #292 (the "Ruling").

## I.  DISCUSSION

Plaintiffs' Motions for Reconsideration seek a second bite at the proverbial apple and offer no good reason for the Court to reconsider the Ruling.

### A.  Standard for Reconsideration

L.R. Civ. P. 7 (c)(1) states in relevant part:  "Motions for Reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions. Such motions will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order."  This Court has stated:

> "The standard for granting a motion for reconsideration is strict." *Roman v. Leibert*, No. 3:16-cv-1988 (JCH), 2017 U.S. Dist. LEXIS 158559, 2017 WL 4286302, at *1 (D. Conn. Sept. 27, 2017) (quoting *Ricciuti v. Gyzenis*, 832 F. Supp. 2d 147, 165 (D. Conn. 2011)); *accord Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also* D. Conn. R. Civ. P. 7(c)(1) ("Motions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions."). "The primary function of a motion for reconsideration 'is to present the court with an opportunity to correct manifest errors of law or fact or to consider newly discovered evidence.'" *Alexander v. Gen. Ins. Co. of Am.*, No. 3:16-cv-00059 (SRU), 2017 U.S. Dist. LEXIS 5963, 2017 WL 188134, at *2 (D. Conn. Jan. 17, 2017) (quoting *Lo Sacco v. City of Middletown*, 822 F. Supp. 870, 876 (D. Conn. 1993), *aff'd*, 33 F.3d 50 (2d Cir. 1994)).
> A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted). Accordingly, "[a] motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted).

In re Peterson, 2020 U.S. Dist. LEXIS 21283 at *1-2 (D. Conn. Feb. 7, 2020).[2]  "The

strict limits governing motions for reconsideration seek 'to ensure the finality of

decisions and to prevent the practice of a losing party examining a decision and then

plugging the gaps of a lost motion with additional matters.'"  In re Teva Secs. Litig.,

2021 U.S. Dist. LEXIS 60195 at *20-21 (D. Conn. March 30, 2021)(Underhill, J.)

(citations omitted).  "A motion for reconsideration under Local Rule 7 is not favored and

rarely granted."  Mirlis v. Edgewood Elm Hous., Inc., 2022 U.S. Dist. LEXIS 30270 at

*25-26 (D. Conn. Feb. 21, 2022) (Haight, J.)(citations omitted).

B.    Reconsideration of the Ruling on the Motion for Oral Argument (Dkt. #293)
      is Not Warranted.

Plaintiffs' motion is confusing.  First, Plaintiffs ask the Court to "reconsider its

decision (ECF No. 292) regarding the plaintiff's *Motion for Oral Argument* (ECF No.

290)."  Dkt. #293 at p.1.  Plaintiffs' Motion for Oral Argument is Dkt. #287, while

Plaintiffs' Motion for Order to Allow Plaintiffs to File Reply Out of Time is Dkt. #290.[3]

Second, although Plaintiffs' Motion is entitled "Motion for Oral Argument and

Presentation of Witnesses," Defendants are unaware of any timely motion requesting

"presentation of witnesses."  Similarly, Plaintiffs' Motion (Dkt. #293 at p. 5) mentions the

need for a "hearing."  Presumably, Plaintiffs mean an evidentiary hearing.  Plaintiffs did

not file a motion for an evidentiary hearing.  Rather, Plaintiffs filed a Motion for

Appointment of a Special Master (Dkt. #284) which was denied by the Court on March

---

[2] Apparently, the Court enunciated this standard in connection with a motion for reconsideration in a case
concerning one of Plaintiffs' affiants.  Dkt. #293 at Exhibit A; Dkt. #294 at Exhibit F.
[3] Later in the document, Plaintiffs correctly identify the Motion for Oral Argument as Dkt. #287.  Dkt. #293
at p.3.

30, 2023 (Dkt. # 286).  Plaintiffs did not file any motion for reconsideration of such order

(Dkt. #286).  Moreover, any such motion would have been untimely by April 21, 2023.

L.R. Civ. P. 7 (c)(1) ("In circumstances where such motions are appropriate, they shall

be filed and served within seven (7) days of the filing of the decision or order from which

relief is sought . . . ."); In re Teva Secs., 2021 U.S. Dist. LEXIS 60195 at *17 ("As I

recently remarked, the time-bar in Local Rule 7(c) should be strictly enforced.").  After

their Motion for Appointment of a Special Master was denied, Plaintiffs filed their motion

to file a late reply brief in which they sought to supplement their Motion for Contempt

with an "extensive" factual record—in the absence of an evidentiary hearing.  Plaintiffs'

Motion (Dkt. #293) does not explicitly seek (in the title or the body of the motion)

reconsideration of the Court's decision to deny the motion to file a late reply brief.  In the

absence of a timely motion to reconsider the Motion for Appointment of a Special

Master (Dkt. #284) and in absence of any substantive discussion of the denial of the

request to file an out-of-time reply brief, the only motion for which reconsideration has

been sought is Plaintiffs' untimely Motion for Oral Argument (Dkt. #287).[4]

   Plainly, under L.R. Civ. P. 7, the decision to grant oral argument lies squarely

within the discretion of the Court.  Certainly, Plaintiffs do not point to any intervening

change in controlling law.  Indeed, Plaintiffs do not point to any evidence that was

---

[4] If the Court were to entertain any reconsideration of its Ruling concerning Plaintiffs' Motion to File a Late Reply Brief, Defendants contend that the Court properly denied such motion for the reasons stated in the Ruling.  Likewise, if the Court were to reconsider its March 30, 2023 Order on the Motion for Appointment of a Special Master, such Order was properly decided for the reasons stated therein.  Additionally, Plaintiffs concede that "there does not exist an absolute right to a hearing with the context of a motion for contempt . . . ." Dkt. #293 at p.5.  Thus, to the extent that Plaintiffs may attempt to construe their Motion for Appointment of a Special Master as a motion for presentation of witnesses or for an evidentiary hearing, Plaintiffs effectively concede that the Court is not required to undertake any evidentiary hearing and, thus, presentation of witnesses.

overlooked in the existing record.  Rather, Plaintiffs state that "there is a real, factual dispute among parties" (Dkt. #293 at p.3) and move "in light of new evidence and the need to prevent manifest injustice" in support of their request for reconsideration (Dkt. #293 at 4).  This "factual dispute" is alleged to concern "the Hartford Police Department's effectiveness in improving the racial or city resident makeup of the sworn Officers of the Hartford Police Department."  Dkt. #293 at p.4.

As an initial matter, it seems impossible that "new evidence" or "manifest injustice" could possibly warrant reconsideration of the denial of an out-of-time Motion for Oral Argument.  Again, there is no question that oral argument on a motion is squarely within the District Court's discretion.  Put another way, there is no circumstance under which "manifest injustice" could result from the denial of a request for oral argument.  On this basis alone, Dkt. #293 may be denied.

Plaintiffs offer no substantive reason why the Court should now reconsider its denial of the Motion for Oral Argument.  The "new" evidence offered is in the form of an affidavit by Alyssa Peterson who swears that she is a Hartford resident. Dkt. #293 at Exhibit A.  Ms. Peterson is not identified as an expert witness or as a police officer. Nonetheless, the Peterson affidavit consists of a series of lay opinions regarding budget decisions in 2016 and 2017, the 2016 police contract, an "exodus" of minority police officers and the desirability of homegrown police officers of color.  No facts or statistical evidence are offered.  Put another way, Ms. Peterson's affidavit concerns political opinion.

"[A]ny allegedly newly available evidence must be relevant to the underlying ruling in order to justify reconsideration of that ruling."  First State Ins. Co. v. Ferguson

<u>Enters.</u>, 2019 U.S. Dist. LEXIS 101833 at *22 (D. Conn. June 18, 2019) (Bryant, J.) (citation omitted).  Ms. Peterson's lay opinions regarding City budgeting, funding and related matters are not admissible evidence.  <u>See</u>, Fed. R. Evid. 701.  Moreover, such "evidence" is irrelevant to the question of whether the Court should reconsider its ruling on the Motion for Oral Argument.  The fact that a resident has opinions regarding the funding and operations of a police department has no bearing on whether the Court erred when it denied Plaintiff's Motion for Oral Argument.

Additionally, "evidence in a party's possession before a court's ruling is not considered 'newly available' evidence."  <u>First State Ins.</u>, 2019 U.S. Dist. LEXIS 101833 at *22-23 (citations omitted).  As previously described, Ms. Peterson's affidavit concerns her opinions regarding the 2016 and 2017 budgets, the 2016 police contract and an "exodus" of minority police officers.  Such information (and opinion) was plainly available to Plaintiffs prior to submitting their Motion for Contempt and well before the Court's Ruling on April 14, 2023.  Such information is not "newly available" and, therefore, does not justify reconsideration.

Indeed, there is nothing "new" in Plaintiffs' motion.  A review of the 2018 Motion for Contempt (Dkt. #253) and Judge Bryant's denial of such motion (Dkt. #266) reveal that Plaintiffs have argued these same points, while using the same or similar verbiage, since well before 2018.  There is nothing in the existing record or in Ms. Peterson's Affidavit that presents anything that might reveal a grave error by the Court.  Plaintiffs' efforts amount to an attempt to relitigate the issues decided by the Court.  That is no basis upon which to grant reconsideration.

Plaintiffs next argue that "manifest injustice" will result if the Court does not reconsider its denial of Plaintiffs' late request for oral argument.  "Courts ordinarily have not defined precisely what constitutes clearly erroneous or manifest injustice for reconsideration purposes. At least one court has held . . . that reconsideration is not warranted unless the prior decision is 'dead wrong.'" Mirlis v. Edgewood Elm Hous., Inc., 2022 U.S. Dist. LEXIS 30270 at *25-26 (D. Conn. Feb. 21, 2022) (Haight, J.)(citations omitted) (noting that a movant's motion stated "[i]n the context of a motion for reconsideration, 'manifest injustice' is defined as an error committed by the trial court that is direct, obvious, and observable.").  The denial of Plaintiffs' request for oral argument was correct and certainly not "dead wrong."

Further, Plaintiffs assert that there is a "factual dispute" between the parties. However, even if one were to assume that such a factual dispute existed, the Court can decide whether oral argument would be helpful in identifying the contours of such factual dispute and whether such factual dispute impacted the Motion for Contempt. Plaintiffs summarily argue that the Court's failure to allow oral argument on their allegations concerning minority representation in the Hartford Police Department constitutes "manifest injustice."  Dkt. #293 at p.6.  Defendants fail to see how the denial of a late request for oral argument on a motion constitutes "manifest injustice" in these circumstances.  Certainly, there is no clear indication in the record that "manifest injustice" has resulted from the denial of Plaintiffs' untimely request for oral argument. Plaintiffs' Motion for Reconsideration (Dkt. #293) should be denied.

C.     Reconsideration of the Ruling on the Motion for Contempt and Dissolving
        Any Consent Decree (Dkt. #294) is Not Warranted.

Plaintiffs have failed to supply the Court with sufficient reason to reconsider its

Ruling on the Motion for Contempt.  The Court's Ruling rests on two independent

bases:  Plaintiffs' failure to follow the 2010 Settlement Agreement's provisions regarding

dispute resolution procedures; and Plaintiffs' failure to establish clear and convincing

evidence of a violation of the 1973 Settlement Agreement or 2010 Modification. See,

Ruling at p. 3-4, 9.  In short, the Court found that the Motion for Contempt failed based

on procedure and on the merits.  Ruling at 4 ("Plaintiffs' motion is both procedurally

flawed and substantively meritless.").  Plaintiffs' arguments for reconsideration fail to

undermine either basis for the Court's conclusions.

        i.     Procedure.

In its Ruling, the Court recited the 2010 Settlement Agreement's "Procedure for

Filing Any Contempt Motions" and then cited Judge Margolis' docket entry regarding the

scarcity of activity in the case since 2018.  Ruling at pp. 4-5.  The Court found that the

"motion for contempt can be denied on this basis alone."  Ruling at 5.

In response, Plaintiffs essentially argue that they followed the dispute resolution

procedures but were stymied by the Defendants' actions.  A review of the record reveals

otherwise.  As Judge Margolis pointed out, there was a lack of docket activity in the file

from September 24, 2019, until the October 10, 2022 Motion for Contempt was filed,

except for two motions to extend the sunset date, in the first instance, due to continuing

settlement discussions between counsel and, in the second instance, due to

Connecticut legislation involving police reforms.  Dkt. #278.  Plaintiffs argue that "the

plaintiff's did in fact reach out to defense counsel to contact Judge Margolis prior to filing their *Motion for Contempt*." Dkt. #294 at 3.[5] Defendants concede that Plaintiffs' counsel wrote a letter dated July 1, 2022 (almost three years after the last settlement discussion with Judge Margolis) to defense counsel stating, in relevant part, that "the Department still does not come close to reflecting the community it serves with respect to diversity" and "there are still one or more cases before the Firearms Discharge Board of Inquiry that are old one year or more" and requesting that defense counsel contact Judge Margolis' chambers to set up a mediation." Dkt. #294 at Exhibit A. On July 8, 2022, defense counsel replied and reminded Plaintiffs' counsel that the 2010 Settlement Agreement required the parties to meet and confer to determine whether a dispute exists, determine whether any dispute could be resolved without Court intervention; and to clearly define the issues to be resolved before contacting Judge Margolis. Dkt. #294 at Exhibit B. As defense counsel advised, there is no requirement in the 2010 Settlement Agreement or existing law that the Hartford Police Department (numerically) reflect the community that it serves. The question, of course, is whether there was any dispute that required judicial intervention with respect to such issue. Further, Plaintiffs' counsel was asked to identify the "one or more" cases before Firearms Discharge Board of Inquiry that were allegedly at issue so that the parties could meet and confer on substantive issues. The letter concluded: "Please let me know your clients' position so that we can see whether we can resolve any material issues amongst ourselves or

---

[5] Defendants assert that any such communications between counsel were no different than the continuing settlement discussions between counsel cited by Judge Margolis in Dkt. #278. Indeed, for decades, defense counsel have engaged with Plaintiffs' counsel in order to resolve perceived shortcomings and issues between the Parties.

13

whether we need to involve Judge Margolis." This is what the 2010 Settlement Agreement required. See, Ruling at p. 4 (Procedure for Filing Any Contempt Motions— "Further, the parties agree that, after meeting amongst themselves and before any motion for contempt may be filed by either party, the parties must attempt mediation before U.S. Magistrate Judge Joan Glazer Margolis . . . .").

Plaintiffs' counsel replied in a letter dated September 15, 2022—which was received by defense counsel on or about September 20, 2022. Dkt. #294 at Exhibit C. In his letter, Plaintiffs' counsel conceded that there is no explicit "requirement" that the Hartford Police Department reflect the community that it serves. Thus, there was no basis for contempt on such claims and, in the opinion of defense counsel, no judicial intervention was necessary. Plaintiffs' counsel also identified four (4) cases of firearms discharges that had yet to be administratively resolved. Defense counsel started to investigate such claims but then, Plaintiffs filed their October 10, 2022 Motion for Contempt (Dkt. #273). In short, approximately 20 days elapsed between defense counsel's receipt of Plaintiffs' counsel's letter dated September 15, 2022, and Plaintiffs' filing of a Motion for Contempt. This is not "stonewalling" by Defendants. Rather, Plaintiffs were extremely lax in engaging, in a substantive manner, with the Defendants prior to contacting Judge Margolis as required by the 2010 Settlement Agreement's dispute resolution procedures.[6]

The Court's statement that "[a]t no point between 2019 and the filing of the instant motion for contempt did the parties seek to re-engage with Judge Margolis in an

---

[6] Nothing prevented Plaintiffs from contacting Judge Margolis and requesting a settlement conference in a timely manner. However, such a request might not have been granted due to Plaintiffs' failure to adhere to the substantive meet and confer requirement that needed to occur before contacting Judge Margolis.

effort to avoid the need for court involvement or the filing of a contempt motion" (Ruling

at 5) is true.  As stated in their July 8, 2022 letter (Exhibit B to Dkt. #294), the

Defendants considered the issues to have been resolved.  Plaintiffs' July 1, 2022 letter

simply reiterated broad-brush arguments that had been discussed previously over the

course of at least a decade.  Regurgitation of the same arguments that had been

previously discussed and resolved (either explicitly or by stalemate) does not amount to

the good faith negotiations required under the 2010 Settlement Agreement.  In

response, Defendants promptly asked Plaintiffs to identify precise issues that they could

investigate to undertake substantive discussions between the parties before engaging

Judge Margolis.  There was no reason why Plaintiffs needed to wait until September 20,

2022 to notify Defendants of what they considered to be outstanding issues.  Plaintiffs

simply sought to extend the life of this case with the same arguments that had

previously been discussed.  Nothing submitted by Plaintiffs adequately compels

reconsideration of the Court's findings concerning the procedural deficiencies in

Plaintiffs' Motion for Contempt.

   ii. <u>The Merits</u>.

  As the Court recited, Plaintiffs' Motion for Contempt argued that Defendants were

in contempt for failure to: "1) conduct an immediate investigation into certain instances

of officer discharge of firearms; 2) 'effectively utilize' various methods to form the police

department to reflect the Hartford community, and 3) always take sworn statement from

citizens seeking to obtain arrest warrants."  Ruling on p. 4.  Plaintiffs' Motion for

Reconsideration (Dkt. #294) only addresses the second issue ("'effectively utilize'

various methods to form the police department to reflect the Hartford community.").  Dkt.

#294 at p.6-11.  Plaintiffs offer no substantive discussion of issue #1 (the firearms discharge issue) or issue #3 (the taking sworn statements issue).  Thus, on the merits, Plaintiffs only seek reconsideration of issue #2 (the recruitment issue).  See e.g., In re Teva Secs. Litig., 2021 U.S. Dist. LEXIS 60195 at *20-21 (D. Conn. March 30, 2021)(Underhill, J.) (citations omitted) (""A court need not entertain an argument that was not briefed.").[7]

The Ruling correctly recites that Plaintiffs, in order to prove contempt, must establish that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."  Ruling at 6 (citing, Perez v. Danbury Hosp., 347 F.3d 419, 423-24 (2d Cir. 2002)).  In discussing the recruitment issue, the Court found that "Plaintiffs fail to identify specific, clear and unambiguous provisions of the Settlement Agreement or Modification that Defendants have *violated*. . . . the Court may not impose such an ambiguous benchmark on Defendants in a contempt proceeding."  Ruling at p.8.  In short, among other things, Plaintiffs failed to identify an order that Defendants allegedly violated that was "clear and unambiguous."  In their request for reconsideration, Plaintiffs concede that establishing a police department that accurately reflects the community it serves is not "an explicit requirement" of the Settlement Agreement or Modification.  Dkt. #294 at 7.  As such, Plaintiffs concede that they cannot establish any "clear and unambiguous" benchmark that Defendants were required to meet under the recruitment statements

---

[7] To be clear, Defendants contend that the Court correctly decided that there was no basis for contempt, on the merits, concerning issue #1 (the firearms discharge issue) and issue #3 (the taking sworn statements issue). Such aspects of the Ruling should not be reconsidered.

contained in the 1973 Settlement and 2010 Modification.  Plaintiffs' concession effectively ends the inquiry.  Plaintiffs' request for reconsideration can be denied.

If the Court were inclined to consider other arguments, Plaintiffs do not offer any intervening law that compels a different result or any indication that the Court overlooked something in the record that was dispositive. In their Motion, Plaintiffs apparently assert that there is "new evidence" that the Court should consider or that the failure to grant the Motion will result in "manifest injustice."  Neither assertion, nor the affidavits and exhibits submitted with the Motion, compels a different result.

Plaintiffs point the Court to internet sites and news articles as new evidence demonstrating a need to reconsider the Ruling.  Dkt. #294 at pp.7-8.  Such offerings do not yield admissible evidence—and certainly not persuasive evidence demanding reconsideration.  Additionally, Plaintiffs offer:  an email chain and unsigned letter dated March 3, 2022, to Hartford Police Chief, Jason Thody, from Russell Williams (Dkt. #294 at Exhibit D); the Affidavit of Corrie Betts, who identifies as the President of the Greater Hartford branch of the NAACP (Dkt. #294 at Exhibit E); the same Affidavit of Alyssa Peterson (Dkt. #293 at Exhibit A and Dkt. #294 at Exhibit F); and the Affidavit of Sherry Frazier, a resident of Hartford and participant with various community organizations who, on unidentified dates, was unhappy with the Hartford Police Department's responses to her communications.  Much of this "new evidence" constitutes inadmissible lay opinion evidence and/or inadmissible hearsay.  Several affiants express opinions regarding the level of trust between the Hartford Police Department and minority communities within Hartford and/or the effectiveness of hiring police officers who grew up in Hartford and are of color.  Such opinions, even if one assumed

their admissibility, do not demonstrate grave error in the Court's decision.  Some of the affidavits recount alleged incidents that occurred well before the Court's Ruling (or the submission of the Motion for Contempt) or occurred on unknown dates.  Such "evidence" could have been presented with the Motion for Contempt and, thus, does not constitute "new evidence" for purposes of reconsideration.  None of the "new evidence" offered by Plaintiffs appears to be relevant to the issues before the Court.  Certainly, none of the "new evidence" changes the dictates set forth in the 1973 Settlement or 2010 Modification.  In other words, no "new evidence" offered by Plaintiffs could establish an unambiguous benchmark that Defendants failed to meet with regard to the recruitment issue.

Plaintiffs have failed to present any admissible evidence demonstrating the rare circumstances in which reconsideration should be granted.  The Ruling does not contain obvious error and does not result in manifest injustice.  Rather, the Court properly resolved a case that was 54 years old.  Plaintiffs' Motion for Reconsideration (Dkt. #294) should be denied.

D.     The Dissolution of Any Consent Decree is Effectively Unchallenged.

Plaintiffs only cursorily address the dissolution of any consent decree in their papers and, when they do, they lament its passing.  Dkt. #294 at 11 ("While the Consent Decree was in effect, police-community relations were hot and cold, but at least the citizens of Hartford could take solace in the fact that the Hartford Police Department has a mandate to at least attempt to be better for their citizenry.").  In short, Plaintiffs simply express an opinion that Hartford would be better off if any Consent Decree in this case remained in place.  Plaintiffs offer no intervening decision, overlooked evidence or new

18

evidence as grounds for reconsideration.  Plaintiffs offer no legal reason to reconsider

the Court's granting of the Motion to Dissolve any Consent Decree in this case.  The

Court properly granted such motion and there is no reason to reconsider such decision

at this time.

## II.   <u>CONCLUSION</u>

For the foregoing reasons, there is insufficient cause for the Court to grant either

of Plaintiffs' Motions for Reconsideration.  Dkt. #293 & 294.  Such motions should be

denied.

Respectfully submitted,
DEFENDANTS,
THOMAS VAUGHN ET AL.

/s/
_____

Howard Rifkin, Esq., ct29978
Corporation Counsel
Nathalie Feola-Guerrieri, Esq., ct17217
Assistant Corporation Counsel
City of Hartford
550 Main Street
Hartford, CT  06103

/s/
_____

Joseph W. McQuade, Esq., ct12121
Kainen, Escalera & McHale, P.C.
21 Oak Street, Suite 601
Hartford, CT  06106
(860)493-0870 (tel.)
(860)493-0871 (fax)
jmcquade@kemlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 27th day of April, 2023, a copy of the foregoing Objection to Plaintiffs' Motion for Reconsideration of Order Denying Motion for Oral Argument and Presentation of Witnesses and Plaintiffs' Motion for Reconsideration of Motion for Contempt and Dissolving Any Consent Decree was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties who have appearances as of the time of this filing, by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_____/s/_____<br>
Joseph W. McQuade, ct12121

106536